**SO ORDERED.**

**SIGNED this 17th day of September, 2009.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
**Western District of Texas**
**El Paso Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| PETE LOPEZ | 09-31511-C |
| *DEBTOR* | CHAPTER 13 |

### DECISION AND ORDER DENYING MOTION FOR EXTENSION

CAME ON for consideration the foregoing case. The debtor was granted three extensions in order to file schedules in this case – the latest order having been entered just a week ago. The debtor now seeks a fourth extension. The only cause given is that debtor's counsel is awaiting documents from the debtor.

It is the debtor's responsibility to timely furnish counsel documents necessary to fulfill the debtor's obligations under section 521(a). When the debtor fails to do so, the debtor not only causes delay in the administration of the case, to the detriment of creditors who await payment while the debtor enjoys the benefits of the automatic stay. The debtor's failures also raises the prospect that the case might founder on section 521(*i*).

Section 521(*i*)(1) states that "if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition." 11 U.S.C. § 521(*i*)(1). Section 521(a)(1)(B) in turn provides that, unless the court orders otherwise, the debtor must file a set of schedules, a schedule of current income and current expenditures, and a completed statement of financial affairs. 11 U.S.C. § 521(a)(1)(B)(i), (ii), (iii). Section 521(*i*)(1) *could* thus be read as a hard deadline for filing these documents – even though the court might have granted an extension of time to file.[1] This court declines to go down that road, preferring instead the well-reasoned and sensible approach taken by the bankruptcy court in Washington, D.C. *See In re Spencer*, 388 B.R. 418, 422-23 (Bankr. D.D.C. 2008) (holding that a case is not *in fact* automatically dismissed upon the mere passage of time, but instead should be dismissed upon request of a party upon a showing that the requisite documents have not been filed and the requisite time has passed); *see also* Bankr. L.R. 1017(d) (providing that cases in this district are not automatically dismissed absent the entry of an order upon timely request by a party in interest). Judge Martin Teel, in *Spencer*, noted that "when a statute, rule, or court order intends tha ta case is to stand automatically dismissed without the necessity of a court order upon an event occuring, language is used making that clear." *Spencer*, 388 B.R., at 422 (citing examples). He then adds:

> In comparison to such clear statutory expressions that a case stands

---

[1] The point here is that the "unless the court orders otherwise" is generally read to mean "unless the court excuses the filing of the document in question." A grant of an extension of time to file schedules and the statement of affairs is an extension of the deadline provided in Rule 1007 of the Federal Rules of Bankruptcy Procedure. It is not a *waiver* of the requirement to file, which is the import of the "order otherwise" language in section 521(a)(1)(B). *See*, *e.g.*, *In re Warren*, 568 F.3d 1113, 1118 (9th Cir. 2009) (discussing the "order otherwise" language as statutory authorization to *waive* the requirement to file otherwise imposed by section 521(a)).

> dismissed on a specified date, § 521(*i*)(1) does not use language that clearly would deem the case actually dismissed on the 46th day after the filing of the petition. Had Congress intended that when § 521(*i*)(1) is triggered, the case is actually dismissed on the 46th day, the statute could have provided that "the case is dismissed effective on the 46th day." In other provisions of the Bankruptcy Code, that is how Congress expressed the idea of an event occurring without the necessity of an order of the court. [citing examples in sections 362(h), 365(p)(1), 365(p)(3), 521(a)(6), and 551]. Presumably, Congress intended a different meaning when it used the words "shall be automatically dismissed" in § 521(*i*)(1).[2]

*Id.*, at 423. Judge Teel holds that the language should be construed to mean that the court has no discretion but to dismiss a case upon a showing that the specified events have occurred, rather than to mean that the case is simply automatically dismissed, without the intervention of the court. *Id.*; *see also In re Hall*, 368 B.R. 595, 599 (Bankr. W.D.Tex. 2007) (effectively employing this reading in applying section 521(*i*)); *see also In re Parker*, 351 B.R. 790, 802 (Bankr. N.D.Ga. 2006) (noting that section 521(*i*)'s automatic feature may cause chaos and confusion because there is no readily ascertainable way to determine whether a case has actually been dismissed); *CFCU Community Credit Union v. Pierce*, 2009 WL 2163107 (W.D.N.Y. 2009) (same); *but see In re Fawson*, 338 B.R. 505, 510 (Bankr. D.Utah 2006) (holding that statute's plain language can only mean that a given case is automatically dismissed, without further action by the court or a party in interest).[3]

---

[2] *Spencer* and other courts have noted another reason for taking this approach. It reconciles section 521(*i*)(2), which says that a party in interest may request the court to enter an order *dismissing* the case – meaning that the order itself has the effect of dismissing the case, an entirely unnecessary action if the case were already automatically dismissed by operation of law. Subsection (2) cannot be read as a mere *confirmation* of the fact of dismissal either, else it would mirror the language found in section 362(j) ("on request of a party in interest, the court shall issue an order under subsection (c) *confirming* that the automatic stay has been terminated"). 11 U.S.C. § 362(j) (emphasis added).

[3] Said the district court in *Pierce*,

> Were 521(i)(1)'s automatic dismissal truly automatic, it would create an odd result: if a bankrupt failed to comply with § 521(a) (1), but no-one perceived the deficiency, discharge might still be granted, even though-unbeknownst to anyone-the case had been dismissed. Section 521(i)(2) adds to the confusion since it requires a court to file an order for an automatic discharge. Yet if the discharge were truly automatic, an order

This court agrees with the *Spencer* approach, and adopts it as the holding applicable to cases filed in this district as well. The court adds that *Spencer* effectively ratifies the *de facto* "holding" of this district as expressed in its local rule relating to the implementation of section 521(*i*). *See* Bankr. L.R. 1017(d) (providing that a case will be deemed not dismissed unless a party in interest moves for entry of an order under section 521(*i*), and further providing that the effective date of dismissal at the 46th day can be achieved only if the party so moving makes the request before the 65th day after filing); *see also In re Richardson*, 406 B.R. 586, 587 (Bankr. W.D.N.Y. 2009) (in the context of payment advices, holding that the court must rule on whether the obligation to file such payment advices has been met in order for the case to be "automatically" dismissed, and citing with approval *In re Spencer*).

The effect of this holding is that a court *could* grant extensions of time to file the documents required by section 521(a)(1)(B), and that such extensions would not *necessarily* result in the

---

would be unnecessary.

*Id.*, at *2. A bankruptcy court in the Southern District of New York added,

> [t]aken literally and in the abstract, section 521(i) creates uncertainty as to whether a Chapter 7 case which may have incomplete documentation is currently proceeding and subject to administration by a trustee and under the jurisdiction of the bankruptcy court, or whether the case has been "automatically dismissed effective on the 46th day after the date of the filing of the petition" because no order appears on the docket. ... The uncertainty of an "automatic dismissal" that has not been confirmed by a court order will not only impact a Chapter 7 or 13 trustee charged with administering and monitoring the case, but also the rights of creditors, and ultimately a debtor's ability to reorganize and obtain a discharge.

*In re Tay-Kwamya*, 367 B.R. 422, 425 (Bankr. S.D.N.Y. 2007). These sensible observations move this court to express the fervent hope that Congress will revisit this unfortunate piece of statutory drafting (surely *not* the work of the staff attorneys for either the Senate or House Judiciary Committees, with whose work this court is well familiar and for whom this court has the greatest respect) to clarify how "automatic" dismissal should in fact be achieved. It is unseemly for the courts to be speculating about what Congress "probably" had in mind, and to then effectively add provisions not found in the statute in order to make it work. *See In re Warren*, *supra*; *in re Acosta-Rivera*, *supra*. It would be far better for Congress to simply amend section 521(*i*) to provide for the entry of a court order upon certification by a party in interest, after notice and an opportunity for hearing, along the lines of section 362(j). That way, much chaos and confusion (to say nothing of due process concerns) would be allayed while still giving effect to the apparent intention to eject from bankruptcy debtors who fail to fulfill their disclosure obligations.

-4-

dismissal of the debtor's case, *i.e.*, dismissal would not automatically occur without a court order. In so ruling, the court respectfully disagrees with those courts that have held to the contrary. *See, e.g.*, *In re Beacher*, 358 B.R. 917, 922 (Bankr. S.D.Tex. 2007) (holding that section 521(*i*)(1) is inflexible as to the length of time a court can extend the deadline for filing documents); *In re Lovato*, 343 B.R. 268, 270 (Bankr. D.N.M. 2006); *In re Ott*, 343 B.R. 264, 268 (Bankr. D.Colo. 2006). In other words, if noone moves for an order of dismissal pursuant to section 521(*i*), the case does *not* "stand dismissed. Instead, it proceeds, and all the orders entered therein are effective.[4]

Even under *Spencer*, however, this case now stands vulnerable to dismissal upon motion of any party in interest. Granting further requests to the debtor will not cure this fundamental defect, and the court is not inclined to enter an order affirmatively *excusing* the debtor from the obligation to file schedules and statement of affairs.[5] The debtor has offered precious little cause for not coming up with the necessary documentation to allow his lawyer to do his job, beyond (evidently) that he has not yet got a round tuit. That is not good enough.

The motion for extension is denied. The court leaves it to the parties to decide how next to proceed.

# # #

---

[4] This is no small point. Of course, one first thinks of the debtor's discharge, but there are other orders of great importance whose efficacy must also not stand in doubt for years to come. Confirmation orders in chapter 13 cases are buttressed by both section 1327(c) and the doctrine of *res judicata*, a doctrine whose importance the Fifth Circuit has reiterated many times. *See*, *e.g.*, *Matter of Howard*, 972 F.2d 639 (5th Cir. 1992). And sale orders are highly important in the chain of title for real estate transactions. Placing the efficacy of those orders in doubt would have far reaching ramifications for both chapter 7 trustees attempting to sell the real property of a bankruptcy estate and for title insurance lawyers whose opinions might later be subject to question.

[5] The First Circuit recently ruled that a court has some discretion to forgive compliance with section 521(a), positing that the court might (1) dismiss the case, (2) decline to dismiss the case if the trustee moves not to dismiss on grounds that the best interests of creditors are best served by not dismissing and the debtor tried to file in good faith, or (3) rule that the missing information is not required. *In re Acosta-Rivera*, 557 F.3d 8, 14 (1st Cir. 2009). The court reads the First Circuit's "options" as no options at all – unless the court excuses compliance with section 521(a), the court must dismiss the case (presumably on proper motion).